# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

YAAQOB YOSHIYAH, a.k.a. JAMES W.
PETERS, JR., ADC # 124686                                                                    PLAINTIFF

V.                                   5:09-cv-00117-JLH-JJV

LARRY NORRIS, Director, Arkansas
Department of Corrections, *et al.*                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Chief Judge J. Leon Homes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

**I.  PROCEDURAL HISTORY**

Plaintiff is presently housed at the Pine Bluff Unit of the Arkansas Department of Correction(ADC).  He alleges violations of his First Amendment right of free exercise of his religious beliefs, statutory claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*., and denial of equal protection.  Plaintiff previously litigated some of these matters in an earlier case, *Peters/Yoshiyah v. Wilson et al*., 2:07CV00031 WRW, which was dismissed without prejudice on Plaintiff's voluntary motion on March 31, 2008, when he reached a settlement with ADC personnel.  Plaintiff filed the instant case on April 21, 2009, because he alleges the terms of settlement in the previous action were not upheld by the Defendants.

Plaintiff made a timely demand for a jury trial; however, before expending the resources inherent in such a trial, the Court held a pre-jury evidentiary hearing on January 14, 2010, to determine whether this case should proceed to a jury trial.  Pursuant to the standard set forth in *Johnson v. Bi-State Justice Center*, 12 F. 3d 1133 (8th Cir. 1993), the Court has considered Plaintiff's testimony during the hearing to be true, drawn appropriate inferences in Plaintiff's favor,

and refrained from making any credibility determinations. *Id*. at 1135-36. Viewing the evidence presented during the hearing in this light, the Court must now decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 251-2 (1986)).

II. **FACTS**

Plaintiff's religious affiliation is with the House of Yahweh. While housed at the East Arkansas Regional Unit, he filed his first lawsuit alleging the ADC was not allowing him to fully practice his religion. On March 26, 2008, Plaintiff resolved his concerns and entered into a settlement agreement with the ADC that allowed him time off work during his Saturday Sabbath and provided him "at least 9 peanut butter sandwiches on Friday to eat on Saturday as a religious accommodation." Plaintiff also obtained permission to view House of Yahweh religious videos in the chapel twice a month, as long as the chaplain was available to monitor the program.

Mr. Yoshiyah was transferred to the Pine Bluff Unit in January 2009. He now alleges these agreed-upon terms are not followed at the Pine Bluff Unit and his rights to religious freedom are once again being violated.

At the hearing, Plaintiff specifically identified three issues he seeks to resolve in this lawsuit: 1) he desires access to various publications from the House of Yahweh that were banned by the ADC publication committee; 2) he wants to watch House of Yahweh videos during his weekly Sabbath with any other inmates who wish to participate; and 3) he seeks more flavorful meals rather than the vegetarian Kosher diet he is provided.

A. **Publications**

According to Plaintiff, the books and pamphlets he seeks access to are published by the

3

House of Yahweh and are "essential to his salvation and education," as he "must have full knowledge to get salvation." Plaintiff has named thirteen books and booklets that have been banned from entering the ADC via donation or purchase, on the grounds of perceived threats to the security and good order of the institution. This determination is made by a committee responsible for reviewing the reading material brought into the prison, and the publications were deemed "inflammatory" in suggesting violence against the government and authorities. *See* Defendants' Hearing Ex. 4. Plaintiff counters that there is "nothing harmful" in any of the books, and it is "the act of Satan in prohibiting them."

### B. Religious Videos

ADC personnel have established a schedule to allow Mr. Yoshiyah to watch his religious videos twice a month in the chapel. According to Plaintiff, watching these videos is "like a convocation" and should occur on the Sabbath – Saturday – rather than Wednesday. Plaintiff further complains he is only allowed to view the tapes alone, and this "hinders the fellowship and growth of the House of Yahweh." "It would be so much better from a spiritual standpoint," according to Plaintiff, for inmates to come together on the Sabbath to view the videos as a congregation.

### C. Meals

Mr. Yoshiyah complains about the quality of the Kosher diet offered by the Unit. His beliefs prohibit the consumption of unclean foods, including pork and beef. At the Pine Bluff Unit, a Kosher diet option is available for the inmates. However, according to Plaintiff, the Kosher meals "are strictly vegetarian and . . . are being served in a manner specifically intended not to be pleasing to the palate." Since the Kosher diet "is not fit to eat," Plaintiff has removed himself from the Kosher diet list, and in this way the Defendants have caused Plaintiff to sin. Plaintiff presented evidence that on the Kosher meal plan, seven frozen vegetarian or soy-based meal options are

4

rotated for lunch and dinner. Plaintiff states he is not a vegetarian and wants meat (*i.e.,* turkey sausage) and other items on the common-fare diet (such as biscuits and grits with sugar and butter) that are not a part of the Kosher meal plan. Plaintiff is currently on a pork-free diet because he believes his body will "shut down" if deprived of meat, and he believes the Kosher meal plan is intended to be unpalatable to discourage inmates from requesting it.

**III.    ANALYSIS**

Prison inmates retain constitutional rights protected by the First Amendment, including the right to free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). Yet, these rights are limited by the fact of incarceration and the valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *Id.*, (citing *Fegans v. Norris*, 537 F. 3d 897, 902 (8th Cir. 2008)). The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators." *Id.* To ensure appropriate deference to those judgments, courts review prison regulations alleged to infringe constitutional rights under a "reasonableness" test that is less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 87-91 (1987).

Congress has also granted additional protection for religious exercise by institutionalized persons. The Religious Land Use & Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, enacted in 2000, succeeded a similar statute, the Religious Freedom Restoration Act ("RFRA").[1] RLUIPA, like RFRA, provides that no government shall impose a "substantial burden" on the religious exercise of an inmate, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden (1) is in furtherance of a

---

[1] The RFRA was held unconstitutional, as an invalid exercise of Congress' power under the Fourteenth Amendment as it applied to the States. *City of Boerne v. Flores*, 521 U.S. 507 (1997).

compelling governmental interest, and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1. The United States Supreme Court has remarked that "context matters" in the application of this "compelling governmental interest" standard, and that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). In *Fegans*, *supra*, the United States Court of Appeals for the Eighth Circuit noted that "lawmakers who supported RLUIPA were 'mindful of the urgency of discipline, order, safety, and security in penal institutions,' and expected that courts would apply the Act with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Fegans* at 902 (citations omitted).

### A. Banned Publications

#### 1. First Amendment Claims

While prisoners retain their constitutional rights, they are subject to limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004), *cert. denied*, 543 U.S. 991 (2004). Therefore, an inmate's constitutional claims are evaluated under a lesser standard of scrutiny. *Id.* "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In considering Plaintiff's claims, the Court must look at four factors: (1) whether there is a 'valid rational connection' between the prison regulation and the government interest in justifying it; (2) whether there is an alternative means available to the prison inmates to exercise the right; (3) whether an accommodation would have a 'significant' 'ripple effect' on the guards, other inmates, and prison

6

resources; and (4) whether there is an alternative that fully accommodates the prisoner 'at *de minimis* cost to valid penological interests.' " *Id*. at 982-83 (quoting *Turner*, 482 U.S. at 89-91).

Giving Plaintiff full credit for his testimony, as a matter of law, his claim fails. The evidence presented at the hearing reveals that the ADC has, in fact, a valid rational connection between the denial of certain materials and the prison's interest in safety and security of the inmates and staff. ADC personnel reviewed the extensive list of books Plaintiff requested. ADC personnel have culled this list and provided Plaintiff with access to the vast majority of those books. Of the 48 books and booklets requested, the ADC disapproved only 14. (Pl.'s Hearing Ex. 1). Grievance responses reveal Defendants have denied the remainder of the books based on legitimate penological interest in regulating inmate reading materials to preserve the safety and security of Plaintiff and the prison. Specifically, ADC personnel told Plaintiff they denied some of the materials due to safety concerns for the institution because passages included statements that "the Government, Hospitals, Law Enforcement Agencies... are serving satan [*sic*], and several passages stating that Mary is a Whore and satan's [*sic*] servants include America's court system, referring to the Government as being controlled by satan [*sic*] the devil." (Df.'s Hearing Ex. 4).

In determining the reasonableness of the ADC's actions, the second *Turner* standard asks whether Plaintiff has another way to exercise his constitutional right to practice his religion. Given the fact that the ADC has provided Plaintiff with the majority of his requested books, the Court believes Defendants have satisfied this second prong. While it is not exactly what Plaintiff seeks, Plaintiff clearly has alternative methods of practicing his faith in these methods.

Furthermore, the third *Turner* reasonableness standard requires the Court to evaluate the impact that the accommodation of Plaintiff's right to practice his religion would have on guards and other inmates. Again, based on responses to the grievances, it is clear the ADC review committee

7

determined the banned books contained material that could potentially inflame inmates and guards. Hence, the Court finds the accommodation could have a significant impact on the security of other inmates and guards, and on the internal safety of the prison. "When the accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Accordingly, the Court defers to the informed discretion of Defendants as to the safety and security threats created by inmates who might be energized to violence by these texts.

The fourth *Turner* factor asks whether there are alternatives that fully accommodate Plaintiff's right to practice his religion at *de minimis* cost to valid penological interests. As Plaintiff testified at the hearing, information contained in several of the banned booklets is already available to him in a compendium which he possesses, and many other books and videos are available to him as well.

Accordingly, the Court concludes that, as a matter of law, Defendants have a legitimate penological interest in protecting the safety and security of staff and inmates. Therefore, Plaintiff has failed to carry his burden of establishing that Defendants violated his First Amendment rights and his First Amendment claim should be dismissed.

### 2. RLUIPA Claim

Plaintiff also alleges the Defendants violated RLUIPA, 42 U.S.C. § 2000cc-1, by denying him these publications. An inmate's claim under RLUIPA is subject to review under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Gladson v. Iowa Dep't of Corrections,* 551 F.3d at 825, 832 (8th Cir. 2009) (quoting *Murphy*, 372 F.3d at 986). RLUIPA provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

The United States Court of Appeals for the Eighth Circuit has defined "substantial burden" as meaning the government action "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." *Murphy v. Mo. Dep't of Corr.*, 506 F.3d 1111, 1115 n. 7 (8th Cir. 2007).

RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). While the government must meet a higher burden in RLUIPA claims than for First Amendment claims, the law still affords "'a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden.'" *Gladson,* 551 F.3d at 832 (quoting *Murphy,* 372 F.3d at 987).

Again, Plaintiff submitted a lengthy list of requested books and ADC personnel reviewed that list and provided Plaintiff with the majority of the requested books. Defendants have provided a valid reason for denying certain books. As a matter of law, Plaintiff cannot show Defendants have substantially burdened his rights to exercise his religion. Accordingly, Plaintiff's RLUIPA should be dismissed.

### B. Religious Videos

Through his previous settlement agreement, Plaintiff is allowed to watch his requested religious videos.[2] However, Plaintiff complains his rights are being violated because the ADC will not establish a schedule for Plaintiff to watch videos with his fellow House of Yahweh inmates.

Plaintiff's claim must fail. Plaintiff admitted that so long as he was able to view the videos, he was able to satisfy the necessary tenets of his religion. Nevertheless, Plaintiff stated that "it would be so much better from a spiritual standpoint" if he could view the videos with other House of Yahweh followers. The Defendants' refusal to provide Plaintiff with the optimal setting for his religious observance fails to rise to the level of substantial burden on Plaintiff's religious needs. Undoubtedly it would be better for Plaintiff to experience fellowship during worship. Yet, in a prison setting, denying Plaintiff the opportunity to share this experience with others does not violate Plaintiff's constitutional or legal rights. *Cf. Baranowski v. Hart*, 486 F. 3d 112 (5th Cir. 2007)(Refusing Jewish inmates ability to congregate for religious services when rabbi or outside volunteer was not available resulting in denial of some weekly Sabbath and other holy day services, did not place "substantial burden" on inmate's free exercise of religion, and did not satisfy threshold requirement for inmate to assert claim against officials under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

### C. Kosher Diet

Prisoners "have the right to be provided with food sufficient to sustain them in good health

---

[2] At the hearing, defense counsel reported she would try to reach an agreement with Plaintiff on this issue. In the days following this hearing, counsel notified the Court that the ADC would permit Plaintiff and any other inmates who so desire to watch the House of Yahweh videos. They further agreed to allow these videos to be shown on Saturdays as Plaintiff requested. While this information has no bearing on the Court's findings, it is hoped that Plaintiff is able to have the best possible opportunity to fully experience his religion while incarcerated.

that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). While Plaintiff admits the Kosher meals satisfy his religious needs, Plaintiff is dissatisfied with the fact that the Kosher diet is also vegetarian. Plaintiff's quarrel with the ADC on this point is only about taste and fails to rise to the level of a legal or constitutional claim. At the hearing, the parties introduced the various menus as exhibits. (Pl.'s Hearing Ex. 2). After reviewing the menus, it is clear the ADC is attempting to provide a sufficiently healthy meal while satisfying the dietary laws of the various faiths. The ADC is also clearly attempting to be fiscally prudent in providing a one-size-fits-all meal to cover all religions requiring a special diet.

Plaintiff has not shown Defendants are denying him an adequate diet that conforms to the tenets of the House of Yahweh. Rather, he has simply shown the ADC has provided him a "Kosher" diet that does not suit his tastes. This wholly fails to rise to the level of a legal or constitutional impediment to Plaintiff's religious rights and this claim should be dismissed.

## IV. CONCLUSION

After careful consideration of Plaintiff's claims, the Court recommends that Plaintiff's claims be dismissed. Plaintiff fails to show the Defendants have improperly restricted his religious freedoms. Plaintiff is presently able to practice his desired religious activities but seeks further accommodation which the ADC has no constitutional nor legal obligation to provide. As a matter of law, Defendants have not infringed upon Plaintiff's rights to freely practice his religious beliefs and, therefore, Plaintiff's claims should be dismissed. Accepting Plaintiff's evidence as true and giving him the benefit of all favorable inferences, the undersigned concludes that Defendants are entitled to dismissal of all claims against them as a matter of law, without further hearing.

IT IS SO RECOMMENDED this 28th day of January, 2010.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE